# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PROJECT SAFE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Defendant. | Case No: CIV-23-1112-JD <br><br> **JURY TRIAL DEMANDED** <br> **ATTORNEY LIEN CLAIMED** |

## COMPLAINT

Plaintiff Project Safe, Inc. ("Project Safe"), for its causes of action against Defendant Philadelphia Indemnity Insurance Company ("Defendant"), alleges and states:

1. Project Safe is a nonprofit organization that provides trauma informed services to victims of domestic violence, sexual assault, and stalking in Pottawatomie and Lincoln Counties, Oklahoma.

2. At all times material hereto, Project Safe owned the subject property located at 313 N. Union, Shawnee, Oklahoma 74801.

3. At all times material hereto, Project Safe was insured with Defendant by a property insurance policy, Policy No. PHPK2394116.

4. On approximately April 19, 2023, Project Safe's property was damaged by the EF2 tornado that swept through Shawnee, Oklahoma. The tornado boasted wind speeds from 130 mph to 135 mph, uprooted trees, downed power lines, destroyed properties, ripped off roofs, and even closed major highways. Unfortunately, Project Safe's property

was in the path of the tornado and sustained extensive damage to the exterior and interior of the property.

5. The property at issue is Project Safe's headquarters, as well as serves as its facility to carry out its mission of aiding victims of domestic violence, sexual assault, and stalking.

6. Defendant is a foreign corporation incorporated in the State of Pennsylvania and maintains its principal place of business in a state other than Oklahoma. Defendant is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, Glen Mulready, Oklahoma Insurance Commissioner, 400 N.E. 50th Street, Oklahoma City, Oklahoma 73105.

7. Defendant does not dispute the property was damaged on the date of loss.

8. The policy covers damage caused by wind.

9. Project Safe timely submitted a claim to Defendant and allowed the insurer to do any and all inspections or other investigation it desired to do.

10. Defendant breached the subject insurance contract by wrongfully denying Project Safe's claim for storm damage to Project Safe's property.

11. In its handling of Project Safe's claim for damages, Defendant breached the insurance contract and the implied covenant of good faith and fair dealing, as a matter of standard business practice, in the following respects:

    a. failing and refusing payment and other policy benefits for the covered damage to Project Safe's property at a time when Defendant knew that it was entitled to those benefits;

b. failing to properly investigate Project Safe's claim and to obtain additional information both in connection with the original refusal and following the receipt of additional information after reinspection of the subject commercial property at request of Plaintiff's representatives;

c. refusing to honor Project Safe's claim in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

d. refusing to honor Project Safe's claim in some instances by applying restrictions not in the policy;

e. refusing to honor Project Safe's claim in some instances by knowingly misconstruing and misapplying provisions of the policy;

f. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claim arising under these policies to include Project Safe's claim;

g. not attempting in good faith to effectuate a prompt, fair and equitable settlement of Project Safe's claim once liability had become reasonably clear;

h. forcing Project Safe, pursuant to its standard claims practice, to retain counsel to secure benefits Defendant knew were payable;

i. failing to properly evaluate any investigation that was performed;

j. refusing to consider the reasonable expectations of the insured;

k. failing and refusing to properly investigate and consider the insurance coverage promised to their insured;

l. hiring biased "independent" adjusters to utilize reports to improperly investigate and consider;

l. hiring biased engineers to utilize reports to improperly investigate and consider;

m. forcing the insured to hire an attorney for enforce proper payment of property claims;

    n.    failing to pay for the replacement of a roof that Defendant knows is incapable of being repaired due to the Oklahoma building codes; and

    o.    refusing to consider Oklahoma code and industry standards when determining scope of repairs;

    p.    failing to evaluate the information provided by Project Safe properly including the property's pre-loss condition;

    q.    refusing to consider or properly evaluate meteorological data;

    r.    refusing to consider damage in the vicinity to Project Safe's property, including its own customers' other claims associated with the tornado;

    s.    refusing to reasonably consider Project Safe's claimed damages and scope of repair; and

    t.    asserting a coverage position that denies Project Safe's ability to begin repairs of its property;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to Defendant.

    12.    Defendant's conduct in the denial of Project Safe's insurance claim demonstrates a consistent, willful, pervasive, and abusive scheme to deny Oklahoma non-profits insurance benefits associated with storms, in the following respects:

    a.  As a matter of routine practice Defendant hires Donna Geissler as an "independent" adjuster to investigate and evaluate the claim on its behalf;

    b.  Ms. Geissler, on behalf of Defendant, admits the non-profits' properties have "damage" all over their roofs. Ms. Geissler, on behalf of Defendant, will fail to investigate and evaluate the obvious storm damage on-site, damage in the vicinity, and meteorological data supporting the non-profits' claims, and instead hire biased engineers to write reports that aid her in denying insurance claims;

    c.  Ms. Geissler, on behalf of Defendant, routinely hires engineer Robert Chynoweth of Engineering, Inc. to aid in the denial of insurance claims;

4

    d. Mr. Chynoweth, just like Ms. Geissler, has a long history of bias and submits reports to Defendant that are not based on reasonable engineering science – therefore, Defendant improperly evaluates the cause of damage to the non-profits' properties.

    e. Defendant, relying on Ms. Geissler and Mr. Chynoweth's reports, admit the non-profits' properties have "damage" all over the roof. Defendant routinely admits covered storm damage to property in the vicinity, while attributing roof damage to non-covered defects, wear and tear, or other excluded damage.

    f. Defendant pays for minimal, if any, damaged areas of the non-profits' roofs despite demonstrably large storms (such as the April 19, 2023 tornado) and observable storm damage.

    g. Defendant improperly evaluates claims by estimating low benefit payments within a standard deviation above or below the deductible.

13. Defendant has implemented this claims handling practice across the state of Oklahoma and Project Safe's counsel is aware of numerous cases that fit the same pattern and practice.

14. In *MPower, Inc. v. Philadelphia Indemnity Insurance Company*, Case No. CIV-20-1183-SLP (W.D. Oklahoma), Defendant engaged in nearly identical conduct to deny insurance benefits to MPower, Inc., also a nonprofit agency located in Stillwater, Oklahoma:

    a. Defendant hired Ms. Geissler to act as its "independent" adjuster and investigate and evaluate the claim on its behalf;

    b. Per her standard practice, Ms. Geissler hired Mr. Chynoweth as the engineer to investigate the claim;

    c. Per Defendant's standard practice, Defendant relied upon Ms. Geissler and Mr. Chynoweth's biased reports to determine first that none of the roofs were damaged by a demonstrably large storm and, then faced with clear evidence to the contrary, to determine that the

      roofs were damaged by a storm pre-dating Defendant's policy with MPower.

   d. Defendant's investigation and evaluation were unreasonable and improper as it intentionally ignored key evidence regarding the pre-loss condition of MPower's property, the timing of the leaks *after* the subject storm, damage in the vicinity, and the intensity of the storm.

15. In *MPower*, Defendant failure to consider the property's pre-loss condition, damage in the vicinity, and timing of damage, which is evidence of an unreasonable investigation and evaluation.

16. Here, Defendant's denial of Project Safe's claim is nearly identical to that in *MPower*, and therefore, illustrates a consistent, willful, pervasive, and abusive scheme to deny Oklahoma non-profits insurance benefits associated with storms.

17. Pursuant to *Vining v. Enterprise Financial Group, Inc.*, 148 F.3d 1206, 1219 (10th Cir. 1998), the Court held that an insurer's routine pattern and practice in the treatment of other claimants is both relevant and admissible under Federal Rule of Evidence 406. Further, an insurer's pervasive, consistent, pattern of habitually denying claims in the same manner is evidence of bad faith. *Id*. at 1218-19.

18. Defendant's claims handling practice has forced an increased number of insureds to file suit in order to recover owed and payable benefits.

19. Defendant's claims handling practice has resulted in increased profitability for Defendant due to decreased claim benefits paid to insureds.

20. Defendant's claims handling practice has resulted in a significant decrease in claims paid.

21. Insurance industry professionals across the state of Oklahoma have observed Defendant's claims handling practices as well as the resulting increase in claim denials and underpayment of covered claims.

22. Defendant is aware of its claims handling practices and supports the effort to effect a pattern and practice of wrongful claim denials and/or unreasonable "low-ball" settlement offers.

23. As a direct and proximate result of Defendant's breach of contract and breach of the implied covenant of good faith and fair dealing, Project Safe has suffered the loss of the policy benefits, and other consequential damages including loss of reputation.

24. Defendant recklessly disregarded and/or intentionally and with malice breached its duty to deal fairly and act in good faith entitling Project Safe to recover punitive damages.

**WHEREFORE**, Project Safe, Inc., demands judgment against Defendant Philadelphia Indemnity Insurance Company for compensatory and punitive damages with interest, costs of this action, reasonable attorneys' fees, and such other relief as may be appropriate. The amount sought for damages is in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. §1332.

|  |  |
|---|---|
|  | **MANSELL & ENGEL** |
| **JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** | By:  *s/Jordyn L. Cartmell*<br>Jordyn L. Cartmell, OBA #31043<br>Adam Engel, OBA #32384<br>204 North Robinson, 21st Floor<br>Oklahoma City, OK 73102-7201<br>T: (405) 232-4100 ** F: (405) 232-4140<br>E-mail:  jcartmell@meclaw.net<br><br>**ATTORNEYS FOR PLAINTIFF** |